Argued March 4, affirmed April 10, 1963

# HEIDER *v.* DIETZ ET AL
### 380 P. 2d 619

*Kenneth E. Shetterly* and *Jerome L. Noble,* Dallas, argued the cause for appellant. With Noble on the brief were Hayter & Shetterly, Dallas.

*Howard E. Parcel,* Portland, argued the cause and filed a brief for respondents Dietz.

No appearance for respondent Otto W. Heider.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is an appeal from a decree which denied strict foreclosure of a land sale contract.

The controlling issue is whether the doctrine of equitable conversion applies to the factual situation outlined below.

In 1951, Cecil and Anna Smith sold the land involved in this suit under a title-retaining contract. The original contract purchasers were Albert and Lorraine Valle. Shortly after entering into the contract with the Valles, the Smiths conveyed the same land, by warranty deed, to Otto W. Heider and Callie B. Heider, husband and wife, as tenants by the entirety. The deed does not refer to the interest of the contract purchasers, but the testimony at the trial made it clear that the Heiders took subject thereto. It was not until February 14, 1956, that the Smiths assigned their vendors' interest in the contract. Then they assigned it only to Callie B. Heider. The record contains no explanation for the delay of some five years between the Smiths' deed to the Heiders and their assignment of the contract to Mrs. Heider, nor of the reason for not including Otto W. Heider as an assignee. (He appears on the instrument of assignment as the notary public who acknowledged it.) A fair inference is that

an oral assignment had been made contemporaneously with, and was the reason for, the deed to the Heiders. If so, the written assignment in 1956 would be a memorial at least of such an assignment to Mrs. Heider. Upon trial, however, there was no dispute concerning the assignment. Mrs. Heider is conceded to be the owner of the vendor's interest in the contract. In the meantime, the original purchasers sold their equity and assigned their interests in the contract to the present defendants, George and Matie Dietz, husband and wife. The Smiths and the Valles no longer have any interest in the contract, or in these proceedings.

Until June, 1961, all payments were made, pursuant to the contract, to Mrs. Heider. On or about June 8, 1961, a transcript of a judgment against Otto Heider, obtained in another county, was docketed in Washington County, where the land covered by the contract was situated. The judgment creditor, one Gowin, is not a party to this suit. Mr. and Mrs. Dietz, upon advice that Gowin's judgment against Otto Heider might be a cloud on their title, declined to make the payment due in July, 1961, or any further payment to Callie Heider. They have refused to pay until such time as Mrs. Heider can give them an insured title as called for in the contract. It is conceded that Mr. and Mrs. Dietz made and kept open their tender of the balance owed Mrs. Heider upon the condition that she furnish title insurance.

Mrs. Heider would not, or could not, give the purchasers an insured title, and since the purchasers refused to pay further installments of the purchase money without a policy of title insurance, this litigation resulted. The purchasers answered the complaint for strict foreclosure with a prayer for specific per-

formance of the contract to convey "said premises in fee simple, free and clear of incumbrances * * *."

Upon trial, a preliminary report by a title insurance company doing business in Washington County was received in evidence. The report revealed that the company would not insure the title so long as the judgment against Otto W. Heider remained outstanding. Mrs. Heider does not dispute the fact that the title company has refused to insure the title.

ORS 18.350 provides as follows:

"(1) From the time of docketing an original or renewed judgment or the transcript thereof, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time prescribed in ORS 18.360.

"* * * * *."

■ Mrs. Heider took the position that a judgment against her husband was not a lien upon the real property being purchased by Mr. and Mrs. Dietz, even though the Heiders as tenants by the entirety were the record owners of the land. Mrs. Heider contends that the purchasers therefore had no right to withhold payments, even though a title company had refused to insure the title. Mrs. Heider arrives at this conclusion by claiming that the title company is simply wrong. The cloud on the title, she says, is imaginary. She contends that there is no defect in the title because equitable conversion applies to the transaction in question. Under equitable conversion the vendor's security interest in the land is treated as personal property (not reached by the docketing of a judgment under ORS 18.350), and the vendee's equitable interest in

the land is treated as real property. In other words, Mrs. Heider contends that the doctrine of equitable conversion must be applied, and that when it is applied there remains no real property in this case upon which the judgment lien can attach. She concludes that the purchasers therefore have no right to refuse payment. The then unjustified refusal to pay, she insists, is ground for strict foreclosure.

The purchasers take the position that equitable conversion should not apply in the case at bar, because its application would clearly defeat the purposes equity is called upon to serve. They have proved that at least one title insurance company has refused to insure the title because of the lien of a judgment against Otto W. Heider. They say that Mrs. Heider therefore has the burden of proving that she can give an insured title. The purchasers agree with the title company that the title is defective. Whether the title insurance company is right or wrong in its interpretation of the law, however, the purchasers say they have no duty to continue making payments to Mrs. Heider until they can be assured of receiving an insured title as called for in their contract. The trial court agreed with the purchasers. The purchasers were given a decree for specific performance, i.e., an insured title as a condition precedent to the payment of the tendered purchase money to Mrs. Heider.

■ We could affirm the trial court's decree upon the theory that Mrs. Heider failed to prove that she was entitled to a decree of strict foreclosure under the particular contract before us. The uncontradicted evidence proved the title to be uninsurable. Since the parties to the original contract had called for title insurance, they had, in effect, elected to treat title insurance as their standard of marketability of title.

We could, therefore, under the contract, hold that the availability of title insurance, whether rightly or wrongly withheld, was a condition precedent to the duty of the purchasers to pay the balance of the purchase price.

The parties have, however, argued the case upon an important question concerning the doctrine of equitable conversion. The briefs and argument were centered upon the apparent conflict between *May v. Emerson,* 52 Or 262, 96 P 454, 96 P 1065 (1908), and the recent case of *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960).

In *May v. Emerson,* we have a square holding that equitable conversion does not apply where the judgment creditor has levied upon the vendor's interest. There, a judgment creditor liquidated his lien. He levied upon and sold the debtor-vendor's interest in lands previously sold by the debtor under contract. The judgment creditor thus acquired whatever interest the debtor-vendor had, subject to the equities of the purchaser and subject to the purchaser's right to the performance (conveyance) called for in the contract upon payment by the purchaser of the balance of the purchase money. The effect of the holding in *May v. Emerson* is to keep the doctrine of equitable conversion from operating automatically to extinguish the lien of the judgment creditor insofar as lands previously sold under contract by the judgment debtor may be concerned. The title company in the case at bar evidently relied upon *May v. Emerson.*

The majority opinion in the *Panushka* case contains rather sweeping language to the effect that equitable conversion invariably applies whenever real property is sold under a title-retaining contract. 221 Or at 149-150. We may assume, for the purposes of the case

at bar, that the *Panushka* case was correctly decided, and that the case was a proper one in which to apply the doctrine of equitable conversion. *Cf.* the dissenting opinion, 221 Or at 164. (The case involved devolution of property upon death.)

■ As noted in the *Panushka* dissent, however, neither this court nor other courts actually apply the doctrine of equitable conversion automatically. Equitable conversion is not invoked unless it appears necessary to invoke it in a particular case in order to accomplish equity according to established rules of equity jurisprudence.

■ Clearly, not every contract for the sale of land creates an equitable conversion as a matter of law, even in a class of cases where equitable conversion might normally be the expected result. The doctrine does not ordinarily operate, for example, unless the contract is one that is specifically enforceable. See *Panushka v. Panushka,* 221 Or at 152; Langdell, *A Brief Survey of Equity Jurisdiction* 310 (2d ed, 1908). The doctrine is based on the maxim that equity in a proper case will regard as done that which ought to be done. By the same token, equity will not consider as done that which ought not to be done. In *Huebener et al v. Chinn,* 186 Or 508, 207 P2d 1136 (1949), it was said that if a contract to convey land is not specifically enforceable the purchaser acquires no legal interest in the land before conveyance is made, but has merely a personal claim against the vendor. See, also, Stone, *Equitable Conversion by Contract,* 13 Col L Rev 369, 381 et seq (1913) ; Simpson, *Legislative Changes in the Law of Equitable Conversion by Contract,* 44 Yale L J 559, 563 (1935).

Further support for the proposition that not every contract for the sale of land automatically creates an

equitable conversion may be found in the "risk-of-loss" cases. In Oregon prior to the enactment of ORS 93.290 et seq., and in a minority of other states, the doctrine of equitable conversion has been rejected in risk-of-loss cases where the purchaser has not gone into possession, whether or not a given contract is specifically enforceable. See *Powell v. D.S. & G.R.R.R. Co.,* 12 Or 488, 8 P 544 (1885); and Lacy, *The Uniform Vendor and Purchaser Risk Act,* 36 OLR 108 (1957). Other cases adhering to the minority rule are collected in 101 ALR 1241. A majority of courts hold that where a contract for the sale of land is entered into and no provision is made for allocating the risk of loss to improvements on the land, the vendee is held to bear the risk of loss because, according to the doctrine of equitable conversion, he has become the owner of the real estate. *McGinley v. Forrest,* 107 Neb 309, 186 NW 74, 22 ALR 567 (1921). If, however, specific performance would not be available to a given vendor because intervening liens have prevented his giving a good title, then even courts following the majority rule reject the doctrine of equitable conversion, and the risk of loss remains upon such a vendor. *Kinney v. Hickox,* 24 Neb 167, 38 NW 816 (1888).

Compare also the cases involving devolution of title on the death of either the vendor or purchaser where, if specific performance is not available to either party because the Statute of Frauds has not been complied with, equitable conversion does not apply and title passes as though no contract had ever been made. *Mills v. Harris,* 104 NC 626, 10 SE 704 (1889); Langdell, *A Brief Survey of Equity Jurisdiction* 310 (2d ed, 1908), supra.

In still another factual situation, where a vendor, after selling land under a land sale contract, gave a

mortgage to a third person with notice of the contract, this court had no trouble in recognizing the mortgage as a junior lien upon the land. *Pedersen v. Barkhurst,* 139 Or 483, 10 P2d 347 (1932). In the *Pedersen* case, the doctrine of equitable conversion does not appear to have been invoked. The court held that the lien of the mortgage, being junior to the equity of the contract purchaser, could not prejudice the purchaser, but the court recognized the power of the vendor, while he held title, to create the lien of the mortgage. Obviously, if equitable conversion applied in all cases, the mortgage would have been a nullity rather than a junior equity.

■ It seems, therefore, not inappropriate to conclude, with Dean Pound, that equitable conversion is not a condition of property for all purposes, but is only a name given to a situation resulting from the application of equitable doctrines to special states of facts. Pound, *The Progress of the Law, 1918-1919,* 33 Harv L Rev 813, 831 (1920); *Panushka v. Panushka,* 221 Or 145, 167 (dissenting opinion), supra, and cases cited therein. This does not mean, however, that the whim of the chancellor will determine when an equitable conversion takes place. Cases of the same general class ordinarily will be treated alike. Thus, in cases involving the devolution of interests under a specifically enforceable contract of sale of real property, equity courts have almost uniformly seen fit to apply the doctrine of equitable conversion. *Panushka v. Panushka,* supra (majority). The *Panushka* case is therefore consistent with similar cases elsewhere in its application of the doctrine for purposes of deciding the mode of devolution upon death, in the absence of statute.

The reasons which persuade equity to hold that

equitable conversion applies in devolution cases, or (in a majority of states) in risk-of-loss cases, do not necessarily carry over to cases involving the rights of third-party creditors having judgment liens upon real property. Therefore, although it is settled in Oregon that in equity a purchaser is regarded as the owner of real property for some purposes, it has been held (in other than vendor-purchaser cases) that the judgment lien does not attach to such purchaser's equitable interest in the land. *Smith v. Ingles,* 2 Or 43, 45 (1862); *Cummings v. Duncan,* 22 ND 534, 134 NW 712, Ann Cas 1914B 976 (1912); and see Thompson, *Collecting a Judgment,* 30 OLR 95, 111 (1951).

Equally consistent with the view that an equitable conversion does not take place in every situation where there is a contract to purchase land are the cases which hold that where the vendor is the judgment debtor the judgment lien will attach to the vendor's interest to the extent of the unpaid purchase price. See, e.g., *May v. Emerson,* 52 Or 262, supra, and authorities therein cited; 3 Powell, Real Property 710, § 479. Iowa is the only jurisdiction we have found which holds that because of equitable conversion a judgment creditor may not foreclose his lien and sell the retained interest of the vendor to the extent of its value. See *Cumming v. First Nat. Bank,* 199 Ia 667, 202 NW 556 (1925).

It is our conclusion, therefore, that while the *Panushka* case correctly describes the effects of equitable conversion when the doctrine applies, that case must be limited to its facts when it suggests that equitable conversion automatically applies in every instance of a land-sale contract.

In the case at bar, the purchasers under the land sale contract were entitled to rely upon the rule

laid down in *May v. Emerson,* supra. They were entitled to withhold payment of further installments to Mrs. Heider until she could give assurance of her ability specifically to perform the contract, i.e., to give an insured title. The judgment creditor, who had never been made a party to these proceedings, could, under *May v. Emerson,* levy upon and sell any interest Otto W. Heider may have had in the security represented by the legal title he shared with his wife. In the face of such a potential hazard, the purchasers had no duty to continue to pay money to Mrs. Heider. Neither was it their duty, at their expense, to institute declaratory proceedings, or other litigation to remove the cloud on their title. They could rest upon their tender of the purchase money to Mrs. Heider, conditioned as it was upon performance by her, or, when sued, they could tender the money into court as they elected to do. They might also have impleaded the judgment creditor had they elected to do so. Whatever the outcome of any future contest between the Heiders and the judgment creditor might be, the purchasers are mere stakeholders. Equity will not permit the outcome of litigation by the judgment creditor and the Heiders to enhance the burdens of the purchasers under their contract. Neither will equity suffer the holder of the vendor's interest to work a forfeiture by applying the doctrine of equitable conversion under facts making such application clearly improper.

Affirmed.