Argued January 25, reversed and remanded May 7, 1979

# HITCHMAN et al, *Respondents,*
## *v.*
# HUDSON et al, *Appellants.*
## (No. 94314, CA 10247)
594 P2d 851

J. David Bennett and Randall L. Dunn, Portland, argued the cause for appellants Fred Daufel, Carl R. Clymens, Charles Ringuette, Gary Knepper, Lenay Knepper, Robert Chambers, Anne Chambers, Barbara Daufel, Bruce Broetje, Marjorie Broetje, Gordon Jones, Doris Jones and Betty Prakken, Alice Clymens, Robert Peebler, and Joyce Peebler, J. Gordon Prakken, and Marion Ringuette. With them on the briefs was Keane, Harper, Pearlman and Copeland, Portland.

Edward H. Warren, Portland, argued the cause for appellants George W. Hudson and Annie H. Hudson.

With him on the brief were Jack Cairns, and Acker, Underwood, Beers, Smith & Warren, Portland.

Brian M. Sullivan, Portland, argued the cause for respondents. With him on the brief was Rask & Hefferin, Portland.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

BUTTLER, J.

**BUTTLER, J.**

Plaintiffs, members of the Dietz Airpark Home-owners Association, filed this suit to quiet title to Tract A, a 50-foot wide strip of land which is a combined taxiway and roadway passing through the two existing Dietz Airpark subdivisions. Plaintiffs sought, and the trial court granted, a decree declaring that the defendants Hudsons, who owned property south of the subdivisions, had no right, title or interest in Tract A, and enjoining them from asserting any interest in that property. The effect of the decree is to prevent the Hudsons from using the road in Tract A as access to and from a public road. The defendant Homeowners Association, and all members thereof who are not plaintiffs, and the Hudsons appeal. We review *de novo.*

Prior to 1968, Charles Dietz and his wife Janet were owners of certain lands in Clackamas County described throughout the proceedings as Dietz Airpark 1 and Dietz Airpark 2. In October of 1968, the Dietzes filed a subdivision plat as to Dietz Airpark 1, and in April of 1970, they filed a similar plat as to Dietz Airpark 2 abutting the prior plat to the south. The properties within the plats consist of individual lots on which private residences have been constructed, and which have the right to use an airfield, access to which is over Tract A. In both plats it was noted that Tract A, running north and south through the center of both Dietz Airparks 1 and 2, was for "the use of adjacent landowners in common for ingress and egress" to the county road which ran east and west at the north end of Dietz Airpark 1. The general layout is shown on the following diagram; the airstrip, not shown, abuts the west boundary of the plats.

County Road

Dietz Airpark
[No. 1]

Tract A

Dietz Airpark
No. 2

Hudson
5.0 acre
tract

Proposed Dietz
Airpark No. 3

Hudson
2.19 acre
tract

Blundell
property

[62]

Both of the subdivisions are subject to a recorded "Declaration of Restrictions, Covenants and Conditions for Dietz Airpark." The Declaration recites that it is executed "pursuant to the provisions of the Unit Ownership Laws of the State of Oregon." The Declaration provided in pertinent part:

(A) Each member of the Homeowners Association was granted a right of easement and enjoyment in and to the common properties;

(B) Dietz may retain legal title to Tract A until December 31, 1971, at which time he was to convey it to the Homeowners Association or to a municipal corporation, public agency or authority if so directed by the homeowners;

(C) Periodic assessments may be made on Association members, and owners of contiguous properties annexed to the Airpark for maintenance of common properties;

(D) Additional property could be annexed with the assent of two-thirds of the homeowners and Dietz, or Dietz, within ten years from the date of recording of the Declaration, could annex contiguous property without the homeowners' consent;

(E) The power to enforce the Declaration of restrictions was given to the Dietz Airpark Homeowners Association, which was not then in existence.

On April 20, 1970, the Dietzes purchased from one Blundell an additional tract of land immediately south of Dietz Airpark 2, part of which abutted Airpark 2. ("Blundell Property" on diagram.) Access to that entire parcel was over Tract A then owned by the Dietzes, unless they had divested themselves of all of the property in the two plats, including Tract A, by submitting it to the Unit Ownership Law. It was anticipated that the Blundell tract, or at least part of it, would be annexed to the existing subdivision as "Dietz Airpark 3," which could be accomplished by the Dietzes under the Declaration prior to December 17, 1978, without the consent of members of the Homeowners Association. It is apparent that additional use of

[63]

the road by occupiers of this property was contemplated. On March 2, 1972, the Dietzes conveyed 2.19 acres of the Blundell property, which did not abut Dietz Airpark 2, to defendants George and Anne Hudson. ("Hudson 2.19 acre tract" on diagram.) The deed from the Dietzes to the Hudsons included an easement for roadway purposes over that portion of the Blundell property retained by Dietz, which easement connected with Tract A. As part of the consideration, Dietz built a road from the Hudsons' property to Tract A over the easement so granted and as shown on the above diagram.

The Hudsons' property was to be supplied with water from the Airpark water system. The deed subjected the property to periodic assessments for maintenance of the roadway (Tract A) and water systems "in an amount equal to an amount assessed to a holder of property within Dietz Airpark." The Hudsons built a house on their property, which was completed in August, 1972. They have continuously used Tract A for ingress and egress to their property since its acquisition and have made several payments for water system assessments, but have never been asked to pay any assessments for the roadway on Tract A.

During the time between the filing of the subdivision plats and the conveyance to Hudson, Dietz had conveyed lots to the plaintiffs and others in the Dietz Airparks, on which houses were built. The title to Tract A was not conveyed by Dietz to the Association until March 30, 1973.[1] Thereafter, some Association members began to question the Hudsons' use of the road and water system without their being members of the Association.

---

[1] The Homeowners Association is not incorporated, and was not formally organized until April 17, 1975, when bylaws were adopted. Even assuming that it existed as an informal unincorporated association, such an entitly may not hold title to real property. We express no opinion as to whether title is held by the members of the Association board of directors, as joint tenants, as trustees for the individual members of the Association, or whether the individual members hold title as tenants in common.

On June 18, 1973, the Hudsons obtained a deed from Mr. and Mrs. Dietz and three of the five members of the Board of Directors of the Association, recorded July 3, 1973, purporting to grant to the Hudsons an "easement for roadway and utility purposes over and across: Tract A, Dietz Airpark 1 and Tract A, Dietz Airpark 2." The granting of such a deed was not discussed at any meeting of the Association. In fact, Association members generally were not made aware of the existence of that deed until the fall of 1974.

Meanwhile, negotiations for annexation of the Hudsons' property to the subdivisions took place, but nothing was resolved. On February 7, 1975, the Hudsons acquired from a third party a five acre parcel of property, adjacent to Dietz Airpark 2, and north of the parcel they already owned. (Shown as Hudson "5 acre tract" on diagram.) That property was involved in further annexation negotiations, but is not otherwise relevant to the dispositive issues as we see them.

The plaintiffs, owners of four lots in the subdivision, thereafter filed this suit to quiet title to Tract A, naming the Hudsons, the Association and all of its other members as defendants. Following a trial to the court a decree was entered (1) declaring plaintiffs and all defendants except the Hudsons the sole owners of Tract A, with no rights or interests in the Hudsons; (2) nullifying the July 3, 1973, deed which purported to grant Hudson an easement across Tract A; and (3) enjoining the Hudsons from claiming any right or interest in Tract A.

The Hudsons contend, *inter alia,* that they are entitled to an easement of necessity over Tract A to the public road which borders the subdivision. An easement of necessity results from the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of the property and retains whatever is necessary for the beneficial use of the land retained. In *Tucker v.*

[65]

*Nuding,* 92 Or 319, 325, 180 P 903 (1919), the Supreme Court stated:

> "The universally established rule is that where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands, or by his and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway. * * * The basis of such right is the presumption of a grant arising from the circumstances of the case. The necessity does not of itself create a right of way, but it is evidence of the grantor's intention to convey one, and raises an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied, depends upon the terms of the deed and the facts of the case. * * *" (Citations omitted.)

■ For there to be an easement of necessity, there must be unity of ownership in the grantor prior to the severance, *Tucker, supra,* and the way must be reasonably necessary to the grantee's enjoyment of the property, *Rose et ux. v. Denn et ux,* 188 Or 1, 42, 212 P2d 1077, 213 P2d 810 (1950). The trial court found that neither of these conditions existed. With respect to unity of ownership, the court apparently relied on its conclusion that both Airparks had been submitted to the provisions of the Unit Ownership law (then ORS 91.505 to 91.675), thereby divesting the Dietzes of ownership of Tract A prior to their acquisition of the Blundell property and later conveyance to the Hudsons.

■■ The only apparent basis for such a conclusion is that in two places the Declaration of Restrictions recites that the Declaration is made "pursuant to the Unit Ownership laws of the State of Oregon." It is clear, however, that the Declaration did not comply with the Unit Ownership law as it then existed. Without cataloging all instances of nonconformance, it is sufficient to point out that the Declaration failed to set forth the percentage interest of each unit owner in the common elements as required by ORS 91.530(d)

[66]/

(now 91.509(d)), and was not approved by the county assessor and tax collector of the county in which the property is located before it was recorded, as required by ORS 91.535 (now ORS 91.512).[2] In addition, the law requires that the unit owners adopt bylaws to govern the administration of the common property, and that they be recorded simultaneously with the declaration; this was not done. Further, the deeds from the developers of the individual lots did not comply with ORS 91.565(3) and (4)[3] (now ORS 91.536(3) and (4)).

The deficiencies were fatal,[4] and we conclude that neither of the Airparks was validly submitted to the provision of the Unit Ownership law. Accordingly, at the time the Dietzes acquired the Blundell property they still owned Tract A and the right of access over the road to and from the Blundell property. While it is true that the Dietzes had agreed to convey Tract A to the "Association" or a municipal corporation by a certain date,[5] they also had the right to further burden

---

[2] The requirement for County Assessor approval is essential to the unit ownership (condominium) concept in order to permit the Assessor to establish separate taxable units, including the stated proportionate interest of each unit in common property, from what was previously a simple (or possibly a multiple, but different) taxable parcel. It also permits the Tax Collector to collect all taxes that are due and payable to avoid a blanket lien against individual units. A similar requirement existed for the approval of plats (Oregon Laws 1963, ch 285; Oregon Laws 1965, ch 393) but the thrust of that requirement was on the accuracy of the survey of the subdivision. The plats were approved, but the declaration was not.

[3] ORS 91.565(3) required the unit deed to state the use for which the unit was intended, and subsection (4) required that it state the percentages of undivided interest in the common elements appertaining to the unit.

[4] Typically the "condominium" concept has been applied to individual ownership of "apartments," or "units," in a building, or a collection of townhouses. *See* Proxmire, *Symposium on the Law of Condominiums, Introduction,* 48 St. John's L Rev xi (1974). We need not decide whether the Unit Ownership law is applicable to the bare land subdivisions involved here because the defects in the Declaration and procedures were fatal.

[5] The Declaration provided in Article IV, Section 2:

"Section 2. TITLE TO COMMON PROPERTIES: The Declarant may retain title to the common properties and until such time as in his opinion the Association members are able to maintain the same.

the use of the road. Therefore, whatever rights the "Association," or its members, had to Tract A, they were subject to the burdens the Dietzes were entitled to place thereon. All of the Blundell property had access to the County road over Tract A at the time the Dietzes conveyed to the Hudsons the 2.19 acre portion of the Blundell property, and it is clear they intended the grantees to have the same access.

The plaintiffs contend, however, that even though the Dietzes had legal title to Tract A at the time of the conveyance to the Hudsons, they were obligated to convey it to the Association or a municipal corporation or public agency by December 31, 1971, albeit the conveyance was not made until after the Hudson conveyance. Therefore, they argue, the Association, or the individual owners, had equitable title to tract A under the doctrine of equitable conversion, *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960), and the Dietzes did not have unity of ownership of the Blundell property and Tract A at the time of the conveyance to the Hudsons.

Assuming, without deciding, that the doctrine of equitable conversion is applicable here,[6] whatever interest the Association (not then formally organized) or the individual lot owners had in Tract A, that interest was subject to the existing rights of ingress and egress enjoyed by the Dietzes as owners of the Blundell property. Therefore, regardless of who "owned" the underlying fee, the Dietzes had a sufficient

---

Notwithstanding the foregoing, the Declarant shall convey the common properties to the Association members not later than December 31, 1971. The Declarant, if directed by the Association members * * *, may convey the common properties to a municipal corporation, public agency or authority rather than convey such common properties to the Association."

[6] Since the Homeowners Association had not been formally organized prior to the Hudson conveyance, it is not clear who would have the right to enforce the right to a conveyance of Tract A, or who could direct that it be to a municipal corporation. *See Heider v. Dietz,* 234 Or 105, 380 P2d 619 (1963).

[68]

unity of ownership in the Blundell property and the right of access over Tract A to give rise to an easement of necessity in the Hudsons if other prerequisities of such an easement exist.

An easement of necessity will not be implied where the claimant has other practicable ways of ingress or egress or could obtain the necessary way by a reasonable expenditure. *Cheney v. Mueller,* 259 Or 108, 485 P2d 1218 (1971). The trial court found that the Hudsons did not meet their burden of establishing those conditions. We disagree.

Other than over Tract A, only two other means of access to a public road are suggested by the evidence. One could be made accessible only by the construction of a road and a bridge over a gully 20 feet deep and 50 feet wide. The other involved construction of a road on property owned by a third party. We conclude that the evidence is sufficient to give rise to an easement of necessity under the peculiar facts of this case.

The record is clear that the Hudsons were granted an easement over that part of the Blundell property retained by the Dietzes, that the Dietzes constructed a road over the easement so described, and that the road connected with Tract A. Further, the deed to the Hudsons subjected the property conveyed to periodic assessments for maintenance of Tract A at a rate equal to that applicable to a lot owner in the subdivision. The conclusion seems inescapable that it was intended that the Hudsons have access to the public road over Tract A. *Dressler et al v. Isaacs et al,* 217 Or 586, 343 P2d 714 (1959). Since we have concluded that the Dietzes had a sufficient interest in a right of access from the Blundell property over Tract A, and that the Hudsons did not have, and do not now have, any other practicable means of ingress and egress and may not obtain one by a reasonable expenditure, we will imply a way of necessity over Tract A.

[69]

Accordingly, we reverse the decree of the trial court and remand for entry of a decree consistent with this opinion.