In re David S. WILSON, Debtor.

DOMINION BANK, N.A., Plaintiff,

v.

David S. WILSON, Defendant.

No. 7–85–01377.
Adv. No. 7–86–0004.
Civ. A. 87–0445(R).

United States District Court,
W.D. Virginia,
Roanoke Division.

April 28, 1988.

---

James F. Douthat, Phillip D. Payne, IV, Woods, Rogers & Hazlegrove, Roanoke, Va., for plaintiff.

John G. Douglass, Richmond, Va., Charles L. Williams, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This matter is before the court on appeal from the United States Bankruptcy Court. The plaintiff, Dominion Bank, N.A. (hereinafter "Dominion") appeals the decision of the bankruptcy court holding that Dominion's security agreement with the debtor/defendant David S. Wilson (hereinafter "Wilson") did not give Dominion a security interest in a real estate option contract which Wilson exercised prior to signing the security agreement.

The facts are not in dispute. In August, 1978, Wilson entered into a contract with L.B. Holyfield (hereinafter "Holyfield"), which gave Wilson an option to purchase real property in Franklin County (hereinafter the "Holyfield property"). In September, 1979, Wilson sought to exercise the option. When Holyfield refused to comply, the dispute was taken to the Circuit Court of the City of Roanoke. That court's decision was reversed by the Virginia Supreme Court's decision in *Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984). The Supreme Court held that the financing terms provided in the option were neither so ambiguous nor indefinite as to render the contract a nullity. The case was remanded to the Circuit Court to further construe the agreement. That court has not rendered any further judgment.

Between March 1983 and March 1985, Wilson borrowed real estate development loans from Dominion, which were secured with deeds of trust on the property. On March 5, 1985, Dominion acquired a security interest in certain personal property of Wilson, including "accounts receivable, inventory, and contract rights used or held by Wilson in his trade or business...." Record of Appeal at 25. In November 1985, Wilson filed for protection under the Bankruptcy Act, 11 U.S.C. §§ 1101–1174 (1982).

In litigation before the bankruptcy court, the issue arose as to whether the term "contract rights," as used in the March 5 security agreement, gave Dominion a security interest in any interest Wilson may have in the Holyfield property. Judge Krumm ruled that Dominion's security interest does not attach to Wilson's disputed interest in the Holyfield property. It is from that opinion that Dominion appeals.

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158 (1982).

There are two issues before the court. First, is a vendee's interest in a disputed real estate purchase contract an interest in real or personal property? The answer hinges on whether the doctrine of equitable conversion applies to Wilson's interest as it relates to Dominion. This court holds that Wilson's interest is personal property.

Having determined that Wilson's interest is one in personal property, the second issue is whether the term "contract rights,"

as used in Dominion's security agreement, includes Wilson's interest in the Holyfield property. This court reverses the decision of the bankruptcy court, and holds that the security agreement does give Dominion a security interest in Wilson's interest in the Holyfield property.

## I. The Nature of Wilson's Interest

Whether Wilson's property interest in the Holyfield property, as it relates to Dominion, is real or personal is determined by the applicability of the doctrine of equitable conversion.

Judge Bostetter clearly described the doctrine in *In re Community Investments Assoc. I,* 14 B.R. 211, 214 (Bankr.E.D.Va. 1981) where he stated that

" '[t]he doctrine of [equitable] conversion is based on the principal that equity regards things directed or agreed to be done, as having been actually performed *where nothing has intervened which ought to prevent a performance.'* ... The real purpose of this theory 'is to give effect to the manifest intent of a ... vendor and to treat that as done which ... by previous contract with another both have mutually bound themselves to do.' " *Id.* (citations omitted).

Applying equitable conversion to a real estate transaction, the ownership interest changes when the contract is signed. Upon signing, the purchaser holds the purchase money in trust for the seller. The seller holds the legal title of the land in trust for the purchaser. Each party receives an equitable interest in the property legally held by the other. 77 Am.Jur.2d § 317, 478–79 (1975).

In examining the case at bar, this court must determine whether, through the doctrine of equitable conversion, Wilson's interest in the Holyfield property was transformed into a real property interest which would be beyond the reach of Dominion's security agreement.[1] Equitable conversion is a doctrine used primarily to construe ownership interests between the parties participating in the transfer of real property.[2] The court concludes that it would be inappropriate to apply the doctrine to the detriment of a third party not involved in the real estate transfer.[3]

The Supreme Court of Virginia discussed the doctrine of equitable conversion in *Miller v. Kemp,* 157 Va. 178, 160 S.E. 203 (1931). In that case, a land company had conveyed several parcels of land to Gresham and Paschall in 1909. Gresham and Paschall purchased the property together, but different lots were individually titled to either Paschall or Gresham. Gresham purchased lots 1, 2, and 3, and Paschall purchased lot 13.

Gresham sold his property in 1918 to Miller, who entered into a contract to sell the property to Kemp in 1929. The issue before the court was whether Miller could convey title free and clear, because a series of judgments totalling $250,000 had been docketed against Paschall between 1921 and 1926. Even though Paschall had never possessed the legal title to any of the lots which had been owned by Gresham, the trial court held that Paschall had an equitable interest in the property by virtue of the fact that he and Gresham had paid for the property together. The trial court held that since Paschall had never released his equitable interest in the land, the judgment liens entered years later attached to that property and prevented Miller from conveying a title free and clear of defects. 160 S.E. at 206–07.

The Supreme Court reversed the trial court's decision. In considering the reach of a judgment lien,[4] the court considered

1. Va.Code Ann. § 8.9–104(j) (1987 Supp.) provides that "[t]his title does not apply ... to the creation or transfer of an interest in or lien on real estate."

2. *Heider v. Dietz,* 234 Or. 105, 380 P.2d 619 (1963).

3. The court need not consider Dominion's alternative argument that the real estate contract is so ambiguous as to prevent the doctrine from operating between the contracting parties.

4. "It reaches every interest of the judgment debtor in land which the record of the title shows that he had, either before or after the judgment was docketed, even though he has in fact transferred his interest to an innocent purchaser before the judgment was docketed, un-

whether any equitable interest Paschall may have in Gresham's land could be attached by the judgment lien.

The court stated the general equitable conversion principle, and added that as it is "an equitable doctrine [it] cannot be invoked as conclusively determining all legal rights and liens of others." *Id.* The court concluded that the "fundamental error" of the trial court was in holding that all legal rights and interests attached to the equitable rights created by the original contract. *Id.*

Clearly, the Virginia Supreme Court has indicated that the doctrine of equitable conversion does not, in every instance, determine the rights and interests of parties other than the vendor and vendee. As an instrument of equity, the doctrine is only to be applied when required by justice.

Other courts have similarly limited the application of the doctrine. In *Heider v. Dietz*, 234 Or. 105, 380 P.2d 619, the Supreme Court of Oregon discussed the applicability of the equitable conversion doctrine in a case involving the rights of a third party creditor with a judgment lien on the vendor's property. In *Heider*, purchasers under a land sale contract sued for strict foreclosure after a judgment lien had been docketed against the vendor. The vendor counterclaimed and sued for specific performance. Vendor's argument was that since she had contracted to sell the property before the judgment was docketed, she had no real property interest to which the judgment lien could attach. She argued that through equitable conversion she had been divested of her real property interest, leaving her with only the legal title, which she was free to convey. *Id.* 380 P.2d at 624.

The court disagreed with the vendor's argument. It considered several different circumstances where the equitable conversion doctrine is applied. It noted that in risk of loss cases, where there is an unambiguous contract and specific performance

would be available, the majority of states do apply equitable conversion. However, equitable conversion is not usually applied if, for some reason such as ambiguity, specific performance is not available. This is also true for risk of loss cases and cases involving devolution of title on the death of one of the contracting parties. *Id.* 380 P.2d at 623.

The court, citing Dean Pound, concluded that "equitable conversion is not a condition of property for all purposes, but is only a name given to a situation resulting from the application of equitable doctrines to special states of facts." *Id.* 380 P.2d at 623, citing Pound, The Progress of the Law, 1918–1919, 33 Harv.L.Rev. 813, 831 (1920) (other citations omitted).

The court concluded that the reasons for applying equitable conversion in most risk of loss and devolution cases are not present when considering the rights of third party creditors who have judgment liens on real property. It declined to apply the doctrine, and ruled that the purchaser was justified in withholding further payments until the vendor could demonstrate she held a good title. Equitable conversion did not protect the vendor from the judgment-creditor.

Dominion has cited a similar case to the court that, although distinguishable, is nevertheless instructive. In *Leake v. Finance One Mortgage, Inc.*, 57 B.R. 438 (Bankr.W.D.Va.1985), the issue arose as to the effect of a judgment lien docketed after the parties had entered into a contract of sale, (which they had not recorded) and before the closing of the sale agreement. The trustee in bankruptcy argued that the vendor had relinquished all interest in real property as of the date of the contract of sale, and there was nothing to which the judgment lien could attach. The court noted that the argument was "unassailable" as it affected the nature of the interests *"between [the parties]," id.* at 440, indicating that the argument is not "unassailable" with regard to other parties.[5]

less the record itself shows such previous transfer by deed duly recorded." 160 S.E. at 206.

5. The court decided the case on the basis of Va.Code Ann. § 55–96 (1982) which provides that contracts for sale are void as to lien creditors, and ruled that the judgment-creditor

■ This court agrees with the reasoning of the previously cited cases, and the Virginia Supreme Court's direction in *Miller v. Kemp*. Equitable conversion is not to be blindly applied to any situation involving the sale of real estate. As an instrument of equity it is to be applied only when, in light of all the circumstances, justice so demands. Such is not the case before the court. While equitable conversion may be applicable between Wilson and Holyfield, it is irrelevant in the dispute between Wilson and Dominion. As to Dominion, Wilson's interest in the Holyfield property is one in personal property.[6]

## II. "Contract Rights"

■ The court must next determine whether Wilson's interest was included in the security agreement taken by Dominion.

Wilson argues that the term "contract rights," which was used by Dominion in attempting to acquire a security interest in certain of Wilson's personal property, is not appropriate to obtain a security interest in any interest Wilson has in the Holyfield property. Wilson contends that the term "contract right" is a term of art under the code which refers only to a "right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." Appellee's brief at 16, quoting Va.Code Ann. § 8.9–106 (amended 1973).

■ Dominion counters that the term should be given its common, literal meaning, and points to the fact that Wilson himself used the term when describing his interest in the Holyfield property in documents filed with the bankruptcy court. Appellant's brief at 4–6. Dominion also argues that under the notice filing system provided for by the Uniform Commercial Code, as adopted by Virginia,[7] Wilson was on notice as to the extent of Dominion's security interest. The court finds Dominion's contentions persuasive.

Wilson relies on a superceded code provision for the strength of his argument.[8] He asserts that the term "contract right" persists as a "right of payment," and that the 1973 amendments "merged the concept of 'contract rights' into the broader category of 'accounts.'" Appellee's brief at 16–17, (citations omitted). Accordingly, the term "contract right" refers only to rights to receive payment, not rights to receive real estate.

Wilson's argument that "contract rights" is now a subset of "account"[9] and cannot be used to describe items other than those which fall within the definition of account is untenable. While it is true that the 1973 amendments abolished the prior distinction between "account" and "contract right" which was dependent on whether or not the right to payment had previously been earned,[10] the amendments did not further

should be paid from the proceeds of the sale. *See also Security Bank v. Chiapuzio,* 304 Or. 438, 747 P.2d 335, 337 n. 1 (1987) (court refused to apply equitable conversion to alter the "claims of third parties not in privity with the contracting parties." (citation omitted)); *First Security Bank of Idaho v. Rogers,* 91 Idaho 654, 429 P.2d 386, 389 (1967) (A judgment lien docketed against the vendor after vendor has contracted to sell the land extends to the vendor's interest in the land.); *Noyes v. Estate of Cohen,* 123 N.J.Super. 471, 303 A.2d 605 (Ch.Div.1973) (Equitable conversion does not restrict creditor's claim to vendor's interest in the purchase money.)

6. It follows, then, that Wilson's interest is not necessarily excluded from the 1985 security agreement by virtue of Va. Code Ann. § 8.9–104(j) *supra* n. 1.

7. "This section adopts [a] system of 'notice filing'.... What is required to be filed is ... a

simple notice which.... indicates merely that the secured party who has filed may have a security interest in the collateral described." Va. Code Ann. § 8.9–402, Official Comment, (Supp.1987). *See also In re Varney Wood Products, Inc.,* 458 F.2d 435, 437 (4th Cir.1972) ("'notice filing' ... contemplates further inquiry in order to determine whether a given asset is covered by a security agreement.")

8. § 8.9–106 (amended 1973) *supra* p. 875.

9. § 8.9–106 (Supp.1987) "'*Account*' means any right to payment for goods sold or leased, or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance."

10. *In re Himlie Properties, Inc.,* 36 B.R. 32, 34 (Bankr.W.D.Wash.1983) "[T]he term 'contract right' was eliminated as unnecessary and indistinguishable from the term 'account'." *Id.*

restrict the meaning of "contract rights." [11] Although "contract right" can be synonymous with "account," it is not necessarily so.[12] The amendments removing the term from the code, although definitional, should not be considered meaningless.[13] The court should not give "contract right" the same narrow meaning it had when it was specifically defined in the statute.

The code itself uses the term in a way that is inconsistent with the narrow definition urged by Wilson. The official comment to § 8.9–106, states that the term "general intangibles" includes "miscellaneous types of *contractual rights* and other personal property which are used or may become customarily used as commercial security." *Id.* (emphasis added). Clearly the code contemplates "contract right" to encompass more than just a right to payment.[14]

"Account" and "general intangible" are both defined in § 8.9–106, and hence are mutually exclusive. *In re Shiflett*, 40 B.R. 493, 494 (Bankr.W.D.Va.1984). "Contract right" is a term that was both absorbed into the definition of "account," and is used to define "general intangible." It is impossible for the term to have a single meaning and be incorporated in both mutually exclusive categories. Accordingly, the court rejects the narrow definition urged by Wilson, and will give the term its common meaning.

The court also concludes that Wilson was on notice as to the extent of Dominion's security interest.

Va.Code Ann. § 8.9–110 provides that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." *Id.* The official comment further provides that "[t]he test of sufficiency ... is that the description ... make possible the identification of the thing described." Va.Code Ann. § 8.9–110, official comment. The comment further admonishes that courts "should refuse to follow the holdings ... that descriptions are insufficient unless they are of the most exact and detailed nature." *Id.*

The question for this court is whether "contract rights" as used in the security agreement taken by Dominion is sufficient to "make possible the identification of the thing described." The court concludes that it is. Wilson himself used the term to describe his interest in the Holyfield property at least five times in various documents filed with the bankruptcy court. Appellant's brief at 4–6. Clearly, he cannot now claim that the term does not adequately describe his interest.[15]

III. Conclusion

The court has determined that, as to Dominion, Wilson's interest in the Holyfield property is personal property, and therefore could be included in the security agreement. The court also concludes that

11. "[T]he ... amendments ... have been deemed 'functional, definitional, but not substantive' and merely 'declarative of the code as it existed before....'" *Id.* citing *Dynair Electronics, Inc. v. Video Cable, Inc.*, 55 Cal.App.3d 11, 127 Cal.Rptr. 268, 273 (1976) and Official Reasons for 1972 Change, *Uniform Laws Annotated, Uniform Commercial Code*, § 9–106 at 180 (West 1981).

12. *In re Kelly*, 21 B.R. 495, 496–97 (Bankr.W.D.Va.1982), "Contract rights *include* rights to payment of money to be earned by some future performance." *Id.* (emphasis added).

13. *Southern Ry. Co. v. United States Cas. Co.*, 136 Va. 475, 483, 118 S.E. 266, 269 (1923). "An amendment to a statute should always be construed to mean something, rather than nothing." *Id.*

14. *See also In re D.J. Maltese, Inc.*, 42 B.R. 589, 592 (Bankr.E.D.Mich.1984) (A contract for sale of realty was not an "account," but was a "general intangible." The court noted the use of "contract right" in the comment defining "general intangible.")

15. The court is aware of Wilson's argument that § 8.9–402 requires a financing statement which describes a security interest in crops or timber to specifically describe the real estate involved, and that by analogy, a security interest in the ownership of that land should be no less specific. The court notes first that, as to Dominion, Wilson's interest is not real property, and second, this case does not involve any question of notice to third parties since the dispute is only between the parties who signed the security agreement.

the term "contract rights," when given its ordinary meaning, as is appropriate in this case, encompasses Wilson's interest in the Holyfield property. Thus, the court finds that Dominion's security interest reaches Wilson's interest in the Holyfield property.

This court hereby reverses the decision of the bankruptcy court, and holds that the 1985 security agreement granting Dominion a security interest in some of Wilson's personal property, does give Dominion a security interest in whatever interest Wilson has in the Holyfield property. An appropriate order will accompany this opinion.