Argued and submitted June 7, 2012, affirmed February 12, 2014

Fred E. RELLING,
*Plaintiff-Appellant,*

*v.*

Leslie KHORENIAN,
individually and as Trustee of
the Alexander Page Khorenian Trust
and the Eriq Edward Khorenian Trust;
and Robert Miller and Barbara Miller,
husband and wife,
*Defendants-Respondents,*

*and*

Teresa L. HOLTZAPPLE;
and Randy Selby and Tanya C. Selby,
husband and wife,
*Defendants.*

Crook County Circuit Court
09CV0011; A148378

323 P3d 293

J. C. Van Voorhees argued the cause and filed the briefs for appellant.

Jeffrey M. Wilson argued the cause for respondent Leslie Khorenian. With him on the brief was Miller Nash LLP.

No appearance for respondents Robert and Barbara Miller.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Plaintiff owns a parcel of real property in Crook County. He filed a declaratory judgment action in February 2009 against adjoining landowners seeking to establish that he has an easement over their property for access to his property. He appeals a general judgment declaring that express easements exist on the property of two defendants, that those easements are not appurtenant to plaintiff's property, and that no common-law easement of necessity exists across a lot that is adjacent to plaintiff's property. Plaintiff raises four assignments of error. We write to address only plaintiff's contention that, at the time that the adjacent lot was sold by plaintiff's predecessor, N-C-W, Inc. (NCW), NCW held legal title to plaintiff's property and, as a consequence, that a common-law easement of necessity for access to plaintiff's property was created over the adjacent lot when NCW sold it. For the reasons that follow, we affirm.

Plaintiff purchased the Crook County property from NCW in 1972 under an installment land-sale contract. Plaintiff's property is located on a steep hillside within a larger tract of land that NCW had acquired in 1970 and subdivided. At the time of the sale to plaintiff, plaintiff's property was accessible from McKay Creek Road by means of an existing logging road through NCW's retained property. An unrecorded warranty deed, which granted plaintiff "an easement for road purposes to McKay Creek Road," was held in escrow during the term of the land-sale contract. The deed was recorded in 1978 after plaintiff fulfilled his payment obligations.

In the interim, approximately three months after plaintiff had purchased his property, NCW sold an adjoining parcel of land, tax lot 700, to Crowe outright, along with an easement for access to McKay Creek Road.[1] Lot 700 is located directly west of plaintiff's property and was also accessible by means of the logging road, which bisected lot

---

[1] Unlike the description in plaintiff's unrecorded deed, which granted "an easement for road purposes" without further designation, the deed to lot 700 set out in detail the route of an easement, generally following the path of the logging road, that ran from McKay Creek Road to the western border of lot 700—*viz.*, the border opposite plaintiff's property.

700 before reaching plaintiff's property. Shortly thereafter, NCW sold a second parcel to Crowe outright. The deed to that lot, which forms a triangle adjacent and to the west of lot 700, identified a 30-foot road easement along its southern border, which fell on the centerline of the logging road.

Subsequently, NCW sold three additional properties located between lot 700 and McKay Creek Road. Those properties, owned at the time of trial by Selby, Holtzapple, and Miller, respectively, each bordered on the centerline of the logging road, and each was subject to a 30-foot road easement along that border. In addition, although the record is unclear whether pre- or post-dating the sale of plaintiff's property, NCW sold two other properties between plaintiff's lot and McKay Creek Road, owned at the time of trial by Glass and Neill. In 2005, defendant Khorenian purchased both of Crowe's lots from Crowe's successor in interest. The layout of the properties at the time of trial, in context with NCW's original tract of land, is set out below.[2]

Around the same time as Khorenian's purchase, plaintiff, who was contemplating selling his undeveloped property, learned that his realtor had been unable to confirm

---

[2] This diagram represents a simplified re-creation of several maps referred to by the parties throughout the proceedings below and on appeal. It is intended only to serve as a visual aid for the reader.

We also note that NCW no longer exists and, consequently, no longer owns any of the property shown. However, the details and dates of the transactions that conveyed the remaining lots are not in the record before us.

the existence of an easement for access to plaintiff's property. This action for declaratory relief followed. As pertinent here, plaintiff sought a declaration that a common-law easement of necessity existed across Khorenian's property for access to plaintiff's property.[3]

At trial, in addition to the series of transactions outlined above, plaintiff produced evidence that, although he had moved out of Crook County in 1978, he has returned to visit his property periodically since then. From its purchase in 1972, plaintiff has gained access to his property only by means of the old logging road across lot 700. Lot 700, in turn, is accessible by an established driveway that generally follows the path of the old logging road and that terminates near the western border of lot 700. Remnants of the logging road across lot 700 remain beyond the terminus of the driveway, but the roadbed is obstructed by several trees and a garage, which was constructed on the road in approximately 1991. Plaintiff has been unable to gain access to his property by motor vehicle since the construction of the garage on lot 700, although he has parked his vehicle along the driveway and walked the remaining distance to his property on occasion.

To the north of plaintiff's property, the old logging road continues on through the adjacent Neill property and to the northeast through the Glass property, which does not border plaintiff's property. Glass testified at trial that the portion of the old logging road that crosses her property is not in use; it is impassable in places, having "disintegrated" in steep sections and crossing Glass's septic system in another. Neill was not called to testify at trial, and no evidence about the state of the old logging road on Neill's property, or the date NCW sold the Neill property, was offered. Glass gets to her property from McKay Creek Road by means of a driveway that is distinct from both the driveway to lot 700 and

---

[3] In the alternative, plaintiff contended that either an express or implied easement existed across Khorenian's property. The trial court rejected both of those theories, the latter on summary judgment and the former at the close of evidence, and plaintiff does not reprise them on appeal. Plaintiff also sought declarations that the properties of Holtzapple, Selby, and Miller were subject to easements along their borders.

6

the old logging road. Likewise, Neill's property has direct access to McKay Creek Road.

At the close of evidence, plaintiff contended that a common-law easement of necessity was created across Khorenian's property for access to plaintiff's property at the time that he entered into the installment land-sale contract with NCW in 1972 or, alternatively, at the time that NCW conveyed lot 700 to Crowe in 1973. In response, Khorenian contended that, at the time that legal title passed to plaintiff—*viz.*, upon fulfillment of the terms of the land-sale contract in 1978—NCW no longer owned Khorenian's property and, therefore, that plaintiff could not establish the unity of title required for the creation of a common-law easement of necessity.

The trial court agreed with Khorenian. Focusing on the point at which plaintiff obtained legal title to his property in 1978, the court reasoned:

"Plaintiff's claim of implied easement of necessity is based by pleading on NCW's unity of ownership and [NCW's] intent to convey an easement to McKay [Creek Road] through lot [700]. Unfortunately the time to do that was between October 28, 1972 and January 25, 1973[—*viz.*, before the sale of lot 700 to Crowe]. Any conveyance by [NCW] after that time would be a nullity and without unity of ownership. * * * The court notes that there is a possibility of access through [the Neill property]."

On appeal, plaintiff focuses only on the 1973 sale of lot 700 from NCW to Crowe. Plaintiff contends that the sale to Crowe effectively landlocked plaintiff's property by severing its access to McKay Creek Road via the logging road, and, because NCW retained legal title to plaintiff's property at the time, it possessed sufficient unity of title for the creation of a common-law easement of necessity over lot 700. Further, plaintiff contends that no evidence supports the trial court's observation that "a possibility" of access exists by means of the Neill property.[4] In response, Khorenian

4 Defendant also asks that we exercise our discretion under ORS 19.415(3) to review this case *de novo*. To the extent that the underlying claims are equitable in nature, we decline to do that. *See* ORAP 5.40(8)(c) (providing that we exercise *de novo* review "only in exceptional cases").

relies on the doctrine of equitable conversion, arguing that the land-sale contract "severed NCW's equitable title" and that, therefore, "NCW as seller[] had no right to exercise any of the incidents of ownership, including the right to establish an easement of necessity across Tax Lot 700 appurtenant to Plaintiff's property."

As an initial matter, we do not agree that equitable conversion precluded the establishment of a common-law easement of necessity at the time that NCW sold lot 700 to Crowe in 1973. Under the doctrine of equitable conversion, when a property owner enters into a land-sale contract, the purchaser is deemed to be the equitable owner of the property and generally has the right to the full possession and enjoyment of the property. *Security State Bank v. Luebke,* 303 Or 418, 423, 737 P2d 586 (1987). The seller is considered the owner of the purchase price, in essence retaining legal title to the property as security for payment. *Id.* However, "not every contract for the sale of land creates an equitable conversion as a matter of law." *Heider v. Dietz,* 234 Or 105, 112, 380 P2d 619 (1963). In applying the doctrine, courts are cognizant of the maxim that "equity in a proper case will regard as done that which ought to be done," and of the converse. *Id.* Thus, "equitable conversion is not a condition of property for all purposes, but is only a name given to a situation resulting from the application of equitable doctrines to special states of facts." *Id.* at 114.

To that end, before the enactment of ORS 93.290, which codified the assignment of risk between the vendor and purchaser of land under a land-sale contract, Oregon courts had declined to apply the doctrine of equitable conversion in disputes over risk of loss if the purchaser had not taken possession of the property. *See id.* at 113 (citing *Powell v. D. S. & G. R. R. R. Co.,* 12 Or 488, 8 P 544 (1885)). Likewise, in *Pederson v. Barkhurst,* 139 Or 483, 10 P2d 347 (1932), equitable conversion did not preclude the vendor under a land-sale contract from encumbering property subject to the contract by granting a mortgage to a third party. And we do not believe that it is appropriate to apply the doctrine here, where doing so would serve only to preclude NCW from fulfilling the terms of its land-sale contract with plaintiff.

Thus, we turn to the merits of plaintiff's claim. Stated simply, a common-law easement of necessity is implied when the common ownership of two tracts of land is severed, resulting in a tract of land without access to a public right of way. *Tucker v. Nuding*, 92 Or 319, 325-26, 180 P 903 (1919).[5] Encompassed in that articulation are three requirements that must be satisfied before a common-law easement of necessity may be implied: unity of title, severance of ownership, and resulting necessity. *Id.* at 326 ("A right of way of necessity exists only where the person claiming it has no other means of passing from his estate into the public street or road."); *Hitchman v. Hudson*, 40 Or App 59, 66, 594 P2d 851 (1979) ("For there to be an easement of necessity, there must be unity of ownership in the grantor prior to the severance.").

Satisfaction of those three elements is necessary but not sufficient to establish an easement of necessity. When shown, they implicate "the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of the property and retains whatever is necessary for the beneficial use of the land retained." *Hitchman*, 40 Or App at 65. However, the presumption "is one of fact, and whether or not the grant is to be implied depends upon the terms of the deed and the facts in the case." *Tucker*, 92 Or at 325. Plaintiff bears the burden of establishing the implied easement by clear and convincing evidence. *See, e.g., Cheney v. Mueller*, 259 Or 108, 118, 485 P2d 1218 (1971).

Here, plaintiff devotes the majority of his argument on appeal to demonstrating why the terms of his deed and the facts of this dispute support the implication of an easement of necessity at the time of the sale of lot 700 to Crowe, relying on the factors outlined in the *Restatement of Property* § 476 (1944). *See, e.g., Rose v. Denn*, 188 Or 1, 19-24, 212 P2d 1077 (1949) (applying *Restatement* factors in dispute over common-law easement of necessity). Khorenian dismisses that portion of plaintiff's argument as misplaced.

---

[5] We note at the outset that plaintiff's claims are grounded in the common law, and not in ORS 376.150 to 376.200, which provides an avenue to establish a statutory way of necessity. Consequently, our analysis does not concern the operation or application of those statutes.

Noting that the *Restatement* factors are useful only in determining the intent of the grantor *at the time of conveyance,* Khorenian argues that, because the conveyance of legal title to plaintiff occurred in 1978—five years after NCW had sold lot 700 to Crowe—the *Restatement* factors are irrelevant: NCW lacked unity of title at the time of conveyance. *See Hayward v. Ellsworth,* 140 Or App 492, 499, 915 P2d 483 (1996) ("Even if the parties had intended to create an easement to use the center road for ingress and egress to the properties, they could not have intended to create an easement over property that the McLains no longer owned.").

However, Khorenian's unity-of-title argument does not address the creation of an easement of necessity in 1973. In that respect, it is predicated on her contention that equitable conversion barred creation of an easement of necessity between 1972, when plaintiff purchased his property under the installment land-sale contract, and 1978, when plaintiff acquired legal title to his property. We have rejected that contention. 261 Or App at 7. Nevertheless, Khorenian is correct to the extent that plaintiff's reliance on the *Restatement* factors is appropriate only if the elements necessary to establish a common-law easement of necessity have been met. As we have explained, in addition to unity of title, plaintiff also must establish that the severance of ownership actually created a necessity. We conclude that plaintiff failed to make that showing.

At trial, plaintiff presented evidence tending to show that the conveyance of lot 700 to Crowe effectively severed access from plaintiff's property to McKay Creek Road *via the logging road.* However, plaintiff's property was but a small portion of the property that NCW purchased in 1970, and the logging road was not the only point of access to McKay Creek Road from that larger tract of land. *See* 261 Or App at 4 (illustration of NCW property). The properties owned by Neill and Glass each have access to McKay Creek Road that is independent of the logging road, and both properties were owned by NCW for some period of time in the early 1970s, as was additional property that borders McKay Creek Road to the northeast. There is a possibility that NCW owned some or all of those properties at the time that it conveyed lot 700 to Crowe and, consequently, that

NCW had means of access to McKay Creek Road other than across Khorenian's property—whether across the property now owned by Neill, as the trial court noted, or otherwise. That possibility is fatal to plaintiff's claim. *See Tucker*, 92 Or at 326 ("A right of way of necessity exists only where the person claiming it has no other means of passing from his estate into the public street or road.").

Plaintiff argues on appeal that "[t]he 'possibility' of access from [plaintiff's] property to McKay Creek Road through [the Neill property] is not supported by the evidence." But that argument underscores our point: Plaintiff bore the burden of establishing the implied easement by clear and convincing evidence. *Cheney*, 259 Or at 118. Here, plaintiff presented no evidence about the ability of NCW to get access to plaintiff's property at the time that NCW conveyed lot 700 to Crowe by means other than the logging road. The "possibility" of access noted by the trial court in this case reflects, not impermissible speculation by the court, but a failure by plaintiff to meet his burden. Plaintiff had to prove that NCW had no access to McKay Creek Road *other than* through lot 700. The trial court did not err in concluding that he failed to prove that.

We reject plaintiff's remaining three assignments of error without discussion.

Affirmed.