Argued and submitted December 13, 1989, the decision of the Court of Appeals and
the final order of the circuit court affirmed December 12, 1991

Kenneth E. BEDORTHA
and Betty Anne Bedortha,
aka Betty Ann Bedortha,
*Respondents on Review,*

*v.*

SUNRIDGE LAND CO., INC.
and Kenco Data Services, Inc.,
*Defendants,*

*and*

James KITCHELL
and Velva Heintz,
*Petitioners on Review.*

(CC 86-CV-0377-WE; CA A49339; SC S36322)

822 P2d 694

Stanley E. Clark, Redmond, argued the cause and filed the petition for petitioners on review.

Steven L. Philpott, of Armstrong, McCullen & Philpott, P.C., Eugene, argued the cause and filed the response for respondents on review.

Before Peterson, Chief Justice,** and Linde,*** Carson,**** Jones,***** Gillette, Van Hoomissen, and Fadeley, Justices.

CARSON, C. J.

** Chief Justice when case was argued.

*** Linde, J., retired January 31, 1990.

**** Chief Justice when decision rendered.

***** Jones, J., resigned April 30, 1990.

## CARSON, C. J.

The issue in this case is whether a vendor's right to receive payments under an executory land sale contract is a separate personal property interest of the vendor or whether that interest is part of the vendor's real property interest and, therefore, subject to a judgment lien. The Court of Appeals held that the right to receive contract payments — unless properly severed — is a part of the vendor's real property interest. *Bedortha v. Sunridge Land Co., Inc.*, 97 Or App 90, 775 P2d 872 (1989). We affirm the decision of the Court of Appeals.

We take the facts from the Court of Appeals' opinion:

"On January 21, 1987, plaintiffs obtained a judgment against Sunridge for $93,591.96, plus interest, costs and attorney fees. There was no appeal from that judgment. At the time when the judgment was docketed [on January 23, 1987], Sunridge held record legal title to seven parcels of land that it had sold previously under land sale contracts, although on December 17, 1986, it had assigned its vendor's interest in each of those contracts to defendants Kitchell and Heintz. However, the assignments were not recorded until February 27, 1987, after the judgment was docketed. On April 2, 1987, deeds from Sunridge to the assignees of the contracts for the seven parcels were recorded.

"On June 18, 1987, the properties described in plaintiffs' judgment (not the seven parcels) were sold at a sheriff's sale for $47,000, leaving a deficiency on that judgment of $53,498.04. To collect the deficiency, plaintiffs levied execution on Sunridge's interest in the seven parcels that were subject to the executory contracts of sale. Plaintiffs purchased Sunridge's interest in those parcels at the sheriff's sale and then claimed the contract payments owing by the vendees. Because Sunridge's assignees also claimed the right to those payments, defendant Kenco Data Services, Inc. (Kenco), the escrow agent under each of the contracts, refused to disburse the payments without a court order. Plaintiffs and Heintz, Kitchell and Kenco stipulated to an order to show cause joining those defendants as parties and submitted the issue on stipulated facts. The trial court entered a final order determining that plaintiffs are entitled to receive all payments and proceeds paid on the seven contracts on and after January 21, 1987, the date of the

judgment. Heintz and Kitchell appeal[ed]." 97 Or App at 92. (Footnote omitted.)

The judgment was docketed in Deschutes County, and all the parcels are located in Deschutes County. We summarize the chronology of the dispositive events, as follows:

| Date | Event |
| --- | --- |
| December 17, 1986 | Sunridge assigns its rights and conveys its title under seven land sale contracts to defendants Kitchell and Heintz, but does not record the assignments or conveyance. |
| January 23, 1987 | Plaintiffs' judgment against Sunridge for more than $93,000 plus attorney fees, costs, and interest, is docketed. |
| February 27, 1987 | Sunridge records the assignments of the land sale contract rights to defendants Kitchell and Heintz. |
| April 2, 1987 | Sunridge records the deeds conveying the seven parcels of land to Kitchell and Heintz. |
| June 18, 1987 | Sheriff's sale of other real property of the judgment debtor, Sunridge, leaving a deficiency of approximately $54,000. |
| September 17, 1987 | Sheriff's sale of Sunridge's interest in the seven parcels. Purchased by plaintiffs. |

ORS 18.350(1) provides:

"From the time of docketing an original or renewed judgment, as provided in ORS 18.320, such judgment shall be a lien upon all the *real property* of the judgment debtor within the county where the same is docketed, or which the judgment debtor may afterwards acquire therein, during the time prescribed in ORS 18.360." (Emphasis added.)[1]

The parties agree that plaintiffs' judgment became a lien on at least part of Sunridge's interests in the parcels conveyed by land sale contract — that is, the naked legal title to the properties. However, Sunridge maintains that its right to

---

[1] ORS 18.350 was amended in 1987 in an insignificant manner not material to this case.

receive payments under the land sale contracts is personal property and, therefore, not subject to the judgment lien. Plaintiffs, in contrast, contend that the "real property of the judgment debtor," to which their lien attached under ORS 18.350(1), includes Sunridge's right to receive contract payments.

In determining whether plaintiffs' judgment was a lien on Sunridge's right to receive contract payments, we begin with an examination of the nature of land sale contracts.

## LAND SALE CONTRACTS

"The mechanics of the [land sale] contract are quite simple. The seller agrees by contract to convey title upon receipt of the full purchase price, but the buyer has the right to possession before the price is paid. The contract remains in existence for a substantial term before the buyer completes payment. The buyer generally will make installment payments during this term. In effect, the buyer borrows the purchase price from the seller. Timely payment of the installment is a condition precedent to the obligation of the seller to complete performance by delivering the deed. If the buyer defaults on an installment payment, the seller has the right to declare the contract at an end, repossess the property, and retain any payments made to date." Randolph, *Updating the Oregon Installment Land Contract*, 15 Willamette L Rev 181, 182 (1979). (Footnote omitted.)

■ Because the ownership of real property is divisible in so many ways, a real property owner often is described as holding a "bundle of sticks." The portion of the "bundle of sticks" retained by the vendor in a land sale contract includes two large sticks: (1) the right to receive contract payments, and (2) the legal title in the property securing the purchaser's obligation to make the contract payments, with the "concomitant possibility of resuming general ownership of the land upon default." Lacy, *Behind and Beyond the 1975 Legislation on Creditors of Vendors*, 55 Or L Rev 227, 231 (1976). (Footnote omitted.)

■■ The land sale contract is an effective method of real property financing because the vendor's right to receive contract payments is secured by the right to possession of the property if the purchaser fails to make payments timely.

Although it is possible to separate the right to receive contract payments from the right to repossess the property, it is inherent in the nature of the land sale contract, itself, that the right to receive contract payments and the legal title to the property go hand in hand.

## THE EFFECT OF A
## JUDGMENT LIEN ON THE VENDOR

For over three-quarters of a century, this court consistently has held that the lien obtained by a judgment creditor upon the vendor's interest in a land sale contract includes a lien on the right to receive payments: "[W]hen the vendor retains the legal title for the security of unpaid purchase money, a judgment against him is a lien, not only on the naked title, but it also attaches on the money remaining unpaid * * *." *May v. Emerson*, 52 Or 262, 268, 96 P 454, 96 P 1065 (1908) (citing *Stewart v. Coder*, 11 Pa 90 (1849)).

■ *May v. Emerson, supra,* was cited with approval in *Pedersen v. Barkhurst*, 139 Or 483, 10 P2d 347 (1932) (effect of vendor mortgaging its interest in a land sale contract). However, in *Panushka v. Panushka*, 221 Or 145, 150, 349 P2d 450 (1960), this court discussed the doctrine of equitable conversion[2] in the context of a decedent's estate, stating:

"The naked legal title, which the vendor holds in trust as security for the payment of the purchase money, descends to his heirs to be held by them for the benefit of the purchaser, but the vendor has no *interest* in the *land* which is subject to descent. Upon the vendor's death, his interest in the purchase money passes to his personal representative as personalty, and is distributable among the deceased vendor's next of kin." (Emphasis in original.)

This statement gave rise to the notion that, because of the doctrine of equitable conversion, the right to receive contract

___

[2]

"An equitable conversion * * * takes place when a contract for the sale of real property becomes binding upon the parties. Thenceforth, the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price. Upon the execution of the contract, the two contracting parties change positions. The purchaser's interest is 'land,' and the right and interest conferred by the contract upon the vendor is 'personal property,' *i.e.*, ownership of the right to receive the purchase money." *Panushka v. Panushka*, 221 Or 145, 149, 349 P2d 450 (1960).

payments under a land sale contract is personal property. However, *Panushka* was limited to its facts in *Heider v. Dietz*, 234 Or 105, 115, 380 P2d 619 (1963), which reaffirmed the holding in *May v. Emerson, supra*, that "where the vendor is the judgment debtor the judgment lien will attach to the vendor's interest to the extent of the unpaid purchase price." Further, the distinction between real property and personal property relied upon in *Panushka* in the context of decedents' estates has been abolished.[3] *May v. Emerson, supra*, and *Heider v. Deitz, supra*, make it clear that, at least for the purposes of the reference in ORS 18.350 to "real property," *both* the legal title to the property subject to a land sale contract *and* the right to receive the contract payments are subject to a judgment creditor's lien.

Sunridge argues that our recent case of *Security Bank v. Chiapuzio*, 304 Or 438, 747 P2d 335 (1987), compels a different statement of the law: "The line of cases from this court, which includes *Security Bank v. Chiapuzio, supra*[,] and *Panushka v. Panushka, supra*, holds that the vendor's interest in a land sale contract is an interest in personal property." *Panushka* and *Chiapuzio* do not stand for this broad proposition, nor does *Chiapuzio* change the law as set forth above.

The issue in *Security Bank v. Chiapuzio, supra*, was "whether the assignment of a vendor's security interest in a land sale contract, together with his interest in the land subject to the contract, all for the purpose of securing a loan, is a security interest covered by Article 9 of the Uniform Commercial Code (UCC) and therefore required to be recorded * * *." 304 Or at 440. The *Chiapuzio* court "recognized that a vendor's interest in land and the vendor's interest in the land sale contract are not inseparable interests. The coincidence that the interests are usually packaged in a single unit does not make them indivisible." *Id.* at 448. The court concluded that "when a vendor uses the land sale contract *as security for another loan*," *id.* at 449, that use severs from the

---

[3] The distinction between real and personal property in intestate succession and estate administrations was explicitly abolished. Or Laws 1969, ch 591, § 119 (codified at ORS 114.205). "Real property" was redefined to include "all legal and equitable interests in land, in fee and for life." Or Laws 1969, ch 591, § 1 (codified at ORS 111.005(28)).

real property interest the right to receive contract payments, making that right personal property subject to the recording requirements of Article 9.[4]

However, while stating that the vendor's interests in an executory land sale contract may be severed for the purposes of the UCC recording requirements, the court also cited *May v. Emerson, supra, inter alia,* reaffirming the general rule that "[u]ntil the purchaser has paid the full amount under the contract, the vendor continues to have a real property interest in the land. The value of the vendor's interest decreases with each payment, but the *character* of the interest does not change until the contract is completed." *Security Bank v. Chiapuzio, supra,* 304 Or at 441 n 1. (Emphasis added.)

■    To summarize, a vendor's right to receive contract payments under an executory land sale contract may be severed from the vendor's legal title to the land, at least for some purposes. However, in the absence of a clear indication that such a severance was intended (and in the absence of the appropriate actions necessary to effect the severance), a judgment lien under ORS 18.350 attaches both to the vendor's right to receive contract payments and to the vendor's legal title in the real property.[5] We turn to an application of these principles to the present case.

---

[4] Following the decision in *Security Bank v. Chiapuzio,* 304 Or 438, 747 P2d 335 (1987), the legislature amended ORS 79.1040(10) (the provision at issue in that case) to remove interests in land sale contracts and the proceeds of such contracts from the UCC. Or Laws 1989, ch 567, § 1.

[5] This rule does not conflict with our holdings in *Thompson v. Hendricks,* 118 Or 39, 145 P 724 (1926), and *Wilson v. Willamette Industries,* 280 Or 45, 569 P2d 609 (1977). Those cases interpreted ORS 18.350 together with ORS 18.370 to preclude attachment of a judgment lien to the interest of an innocent purchaser for value who took but did not record his title before the lien of his vendor's judgment creditor was filed. *Thompson* essentially carved out an exception to the usual rule that a conveyance is void against judgment liens unless the conveyance is recorded. *See* ORS 18.370 (stating rule). The exception, based on equitable principles, protects innocent purchasers against the harsh result of losing their land to their vendor's creditors. There is no need for an exception in this case — there is no innocent purchaser for value to protect.

Because defendants Kitchell and Heintz were principals of the Sunridge Land Company before the assignment of Sunridge's assignment of contracts to them, we conclude as a matter of law that they had notice of Sunridge's debt to the plaintiffs. *See Phillips v. Colfax Company, Inc.,* 195 Or 285, 299, 243 P2d 276, 245 P2d 898 (1952) (president of debtor corporation presumed to know status of corporate debt). The *Thompson* and *Wilson* cases are inapposite.

## APPLICATION TO THIS CASE

■   Plaintiffs obtained a judgment against Sunridge, which was docketed January 23, 1987. By operation of ORS 18.350, that judgment became a lien on all of Sunridge's real property in Deschutes County, the county where the judgment was docketed. What was the nature of Sunridge's real property on January 23, 1987? Sunridge was the vendor of seven parcels of real property under land sale contracts. However, on December 17, 1986, it had assigned "all its right, title and interest" in the seven land sale contracts to Heintz and Kitchell. On the same date, it conveyed title to the underlying real property to Heintz and Kitchell. Thus, on the date the judgment lien attached, Sunridge ostensibly had disposed of its interest in the seven parcels. However, neither the assignments nor the deeds conveying the land were *recorded*.

ORS 18.370 provides:

> "A conveyance of real property or any portion thereof, or interest therein shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment, or the transcript thereof as the case may be."

At the time plaintiffs' judgment lien attached, neither the assignments nor the deeds were recorded. Neither had Sunridge successfully severed a personal property interest from its real property interest in the land sale contract, thereby creating an interest not subject to ORS 18.350 or 18.370. Accordingly, plaintiffs' judgment lien retained its priority. The decision of the Court of Appeals and the final order of the circuit court are affirmed.