In re JOHN W. STOLLER, INC., Debtor.

Edward C. HOSTMANN,
Trustee, Plaintiff,

v.

WILBUR–ELLIS COMPANY, a California corporation; Household Finance Corporation II, a Delaware corporation; Cuddy Farms, Inc., an Oregon corporation; John W. Stoller and Joann M. Stoller, husband and wife; Wilbur A. Stoller and Helen L. Stoller, husband and wife, Defendants.

Bankruptcy No. 392–37358–dds7.
Adv. No. 93–3561.
Civ. No. 95–59–FR.

United States District Court,
D. Oregon.

Feb. 28, 1995.

Annette T. Kolodzie, Gary L. Blacklidge, David A. Foraker, Greene & Markley, P.C., Portland, OR, for defendant Wilbur–Ellis Co.

James Ray Streinz, McEwen, Gisvold, Rankin, Carter & Streinz, Portland, OR, for defendant Household Finance Corp. II.

**OPINION**

FRYE, District Judge:

In the matter before the court, defendant Wilbur–Ellis Company appeals from the final judgment of the bankruptcy court entered on September 22, 1994.

The undisputed facts are set forth in the opinion of the Honorable Donal D. Sullivan, United States Bankruptcy Judge for the District of Oregon, filed on September 22, 1994. The undisputed facts are as follows:

> Wilbur and Helen Stoller sold the property [known as the Home Place] to John Stoller Inc. for $400,000 by a land sale contract dated October 27, 1988. Wilbur and Helen retained a life estate for themselves in the house and one acre of land surrounding the house. A memorandum of the contract was recorded on December 9, 1988. Wilbur and Helen Stoller transferred the property to their son John, and his wife Joann Stoller by warranty deed dated May 17, 1989. The warranty deed conveyed Wilbur and Helen's interest free from encumbrances except for their life estate.
>
> The parties have agreed through their pleadings that the effect of the warranty deed was to convey the vendor's interest in the land sale contract from Wilbur and Helen to John and Joann. The complaint and answers on file indicate that the warranty deed effected the transfer by virtue of ORS 93.850, even though the deposition testimony of John and Joann Stoller shows that they did not intend or expect to receive an interest in the contract as a result of the warranty deed.

Also on May 17, 1989, John and Joann Stoller executed a trust deed entitled Line of Credit Mortgage (mortgage) in favor of HFC [Household Finance Corporation II] to secure the amount of $650,000. The property described as collateral included the Home Place. There was no specific reference to the land sale contract in the mortgage. The warranty deed which conveyed the property and land sale contract to John and Joann from Wilbur and Helen was recorded in Yamhill County on May 23, 1989 as Document 04185. Immediately thereafter, the Mortgage executed by John and Joann in favor of HFC was recorded as Document 04186.

The transcripts of John and Joann's depositions indicate that they did not know they had any interest in the proceeds of the land sale contract, so they did not have any intention to transfer the contract proceeds as collateral to HFC. It appears however, that they did intend to transfer whatever they received from Wilbur and Helen by virtue of the warranty deed. John and Joann testified that they thought that the payments on the land sale contract would be paid to Wilbur and Helen. However, they also stated that they understood that the warranty deed and the mortgage would place HFC in first position against the property ahead of Wilbur and Helen Stoller. At the time the deeds were executed, there was little concern about whether HFC or Wilbur and Helen would be first because the Stollers all believed the property was worth enough to pay both obligations in full.

John and Joann executed another line of credit mortgage in favor of HFC on April 12, 1991. The mortgage was to secure a note in the amount of $690,000 and contained the legal descriptions for most of the property included in the 1989 mortgage. The second HFC mortgage was recorded on April 16, 1991.

In 1992, the debtor, and John and Joann Stoller executed a trust deed and UCC–1a financing statement in favor of Wilbur–Ellis [Wilbur–Ellis Company] to secure repayment of $1 million. The collateral included the part of the Home Place involved here as well as all accounts, contract rights

and other rights to the payment of money. John and Joann's depositions indicate that they did not intend to grant Wilbur–Ellis an interest in the land sale contract because they did not think it was theirs to encumber.

John Stoller Inc. filed chapter 11 on November 10, 1992. The case was converted to chapter 7 on April 19, 1993. Wilbur–Ellis sued John and Joann Stoller and obtained judgments against them in the amounts of $937,375.92 and $51,576.57. The judgments were entered on February 9, 1993 and March 10, 1993, respectively. Wilbur–Ellis obtained relief from the stay to garnish the proceeds of the land sale contract owed by Stoller, Inc. John and Joann Stoller filed chapter 7 on December 27, 1993, and the trustee for their estate has not filed anything to indicate his position on these motions.

Memorandum, pp. 2–5.

The Chapter 7 trustee for the estate of defendants John and Joann Stoller sold the Home Place property for $1,000,000. Defendants Household Finance Corporation II (HFC) and Wilbur–Ellis Company (Wilbur–Ellis) filed cross-motions for summary judgment in the bankruptcy proceeding seeking a determination as to which party is entitled to the balance of the proceeds from the Land Sale Contract after defendant Cuddy Farms, Inc., the agreed-upon first interest holder, was paid. The bankruptcy court granted summary judgment in favor of HFC and against Wilbur–Ellis. The court explained:

Creditors and courts in Oregon have struggled with the proper characterization of a land sale contract over the years. While the stream of payments under the contract itself has been considered personal property, it is secured by and transfers an interest in real property. In the last decade, the Oregon legislature has amended the real property recording statutes and Oregon's Commercial Code to remove land sale contracts from Article 9, and to allow the recording of an interest in a land sale contract in the real property records. ORS 93.640 and 79.1040(10). The statutes do not explicitly state whether an interest in a land sale contract is real property or

personal property, but notice of the interest is provided by filing in the real property records.

The somewhat conflicting case law concerning the nature of a vendor's interest in a land sale contract was reviewed and analyzed in the case of *Bedortha v. Sunridge Land Co., Inc.,* 312 Or. 307, 822 P.2d 694 (1991). The Oregon Supreme Court defined the issue before it in *Bedortha* as:

... whether a vendor's right to receive payments under an executory land sale contract is a separate personal property interest of the vendor or whether that interest is part of the vendor's real property interest and, therefore subject to a judgment lien.

The court affirmed the Court of Appeals in holding that "the right to receive contract payments—unless properly severed—is part of the vendor's real property interest."

Although the creditor in *Bedortha* was a judgment lien creditor rather than a consensual secured creditor, the analysis applied by the Oregon Supreme Court is equally applicable to the transaction between the Stollers and HFC. The transfer of the vendor's interest in the contract from Wilbur and Helen to John and Joann was simultaneous with the transfer from John and Joann to HFC to secure the loan. The vendor's right to receive the contract payments and the title to the property itself were transferred to John and Joann in a single package subject only to the vendee's interest of Stoller, Inc. and the life estate of Wilbur and Helen. There is no evidence to indicate that John and Joann took any action to sever the interests once they were transferred together through the warranty deed. Whatever it was that John and Joann received as a result of the warranty deed, they immediately transferred to HFC as collateral for the loan in 1989.

The recent unpublished opinion in *In re Gold Key Properties, Inc.,* BAP No. OR–93–1635–AsMeO, slip op. (9th Cir. BAP Feb. 4, 1994) was applying Oregon law before it was amended in 1989, and therefore, it is not decisive in this matter.

CONCLUSION

Although it would have been prudent for HFC to have specifically described the land sale contract in the mortgage, the documents and timing of the recording of the deed and mortgage were adequate to allow HFC to prevail as first lien holder (after Cuddy's interest) to the proceeds of the land sale contract.

### STANDARD OF REVIEW

■ A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Weisman*, 5 F.3d 417, 419 (9th Cir.1993).

### ISSUE PRESENTED

The issues presented in this appeal are (1) whether the bankruptcy court erred in holding that HFC had a valid, perfected security interest in the interest of the vendors of the real property, Wilbur A. Stoller and Helen L. Stoller, under the Land Sale Contract dated October 27, 1988 between Wilbur A. Stoller and Helen L. Stoller and the debtor, John W. Stoller, Inc., covering the Home Place (the Land Sale Contract); and, if so, (2) whether the interest of HFC in the interest of the vendors, Wilbur A. Stoller and Helen L. Stoller, in the proceeds due under the Land Sale Contract is prior to the interest of Wilbur–Ellis in such proceeds.

### CONTENTIONS OF THE PARTIES

Wilbur–Ellis contends that the standard deed of trust used by the debtor, John W. Stoller, Inc., to convey to HFC a security interest in the property did not describe the Land Sale Contract as collateral and, therefore, the deed of trust did not create a right to the proceeds from the Land Sale Contract. Wilbur–Ellis contends that the deed of trust created a lien on the proceeds from the Land Sale Contract, and that it is entitled to judgment in its favor.

HFC contends that the bankruptcy court correctly concluded that the deed of trust executed by John and Joann Stoller in favor of HFC created a security interest in favor of HFC in the real property know as the Home Place, including a security interest in the proceeds from the Land Sale Contract.

ANALYSIS

■ The system of recording consensual liens is established under O.R.S. 93.640(1), which states, in part:

Every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser.

O.R.S. 93.643(1) provides, in part: "To give constructive notice of an interest in real property, a person must have documentation of the interest recorded in the indices maintained under ORS 205.130 in the county where the property is located."

The "Line of Credit Mortgage" executed by the borrowers, John and Joann Stoller, and the lender, HFC, states, in part, that the "[b]orrower is indebted to Lender in the principal sum of $650,000.00," and that in order:

TO SECURE to Lender the repayment of the indebtedness ... Borrower in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Yamhill, State of Oregon.

See attached.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents ... all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust....

Exhibit 2 to Affidavit of Gary L. Blacklidge, p. 1. The attachment to the Line of Credit

Mortgage contains a legal description of the property known as the Home Place.

There is no reference in the Line of Credit Mortgage to the Land Sale Contract or to the disposition of the proceeds from the Land Sale Contract. There are no terms in the Line of Credit Mortgage which directly or indirectly refer to the proceeds from the Land Sale Contract.

While HFC argues that the reference to the word "rights" contained in the last paragraph above "broadens the reach of the lien of the Trust Deed" (Appellee's Brief, p. 10), this court finds that the word "rights" unambiguously refers to the real property rights that arise from an interest in real property and does not refer to the contractual rights that someone may have to the property. This is particularly true in this case where the facts are clear that John and Joann Stoller did not know that they had any contractual rights to the proceeds from the Land Sales Contract, and they necessarily had no intent to transfer any right that they had to those proceeds at the time that the Line of Credit Mortgage was executed.

■ A vendor's interest in a land sale contract and the vendor's interest in the land itself are separate interests. *Security Bank v. Chiapuzio*, 304 Or. 438, 444, 747 P.2d 335 (1987). In *Bullock v. Roost*, 119 B.R. 787 (Bankr.D.Or.1990), the court explained:

> The Oregon Supreme Court held that, under Oregon law, a vendor of an executory land sale contract possesses two distinct, divisible and separable interests. The first is the vendor's interest in the real property subject to the land sale contract. The second is the vendor's interest in the contract itself (that is, the right to receive the payments made and to be made on the contract).

*Id.* at 790, discussing *Security Bank v. Chiapuzio*, 304 Or. at 443–44, 747 P.2d 335.

In order for HFC to prevail, this court would have to conclude that the terms of the trust deed executed by John and Joann Stoller in favor of HFC created a lien on the interest of John and Joann Stoller to the payments made on the Land Sale Contract, as well as a lien on the property itself, where

only the interest in the land itself is referred to in the security instruments. HFC argues, and the bankruptcy court agreed, that the interest of the vendor in a land sale contract is a real property interest which is conveyed whenever the interest of the vendor in the land itself is conveyed to a consensual secured creditor.

The position taken by HFC, that the interest of the vendor in a land sales contract is encumbered whenever an interest in the land is created, does apply to a judgment lien creditor by operation of law. O.R.S. 18.350; *May v. Emerson*, 52 Or. 262, 96 P. 454, 96 P. 1065 (1908); *Bedortha v. Sunridge Land Co.*, 312 Or. 307, 822 P.2d 694 (1991).

However, this same rule has not been applied to the claim of a consensual lien creditor who is required to specifically describe the property to be encumbered in the security instruments. A vendor who mortgages its interest in land that is subject to a land sale contract does not grant a security interest in the vendor's interest in the land sale contract. *See, e.g., Pedersen v. Barkhurst*, 139 Or. 483, 10 P.2d 347 (1932); *Lathrop v. Lewis*, 247 Or. 560, 431 P.2d 268 (1967); and *Security Bank v. Chiapuzio, supra.*

■ This court concludes that nothing in the *Bedortha* case or in the amendments to O.R.S. 93.640 and 79.1040(10) alters the general rule that a mortgage given on real property which is subject to a land sale contract does not constitute a lien on the interest of a holder of a land sale contract without the land sale contract being referred to in the security instruments. O.R.S. 93.640 and 79.1040(10) allow a land sale contract to be recorded in real property records, but these statutes do not alter the steps required to be taken in order to create a consensual lien.

The *Bedortha* case applies to judgment liens. *Bedortha* does not apply to consensual liens. Consensual liens, such as liens that attach from mortgages and trust deeds, are liens that attach by virtue of contract. *Call v. Jeremiah*, 246 Or. 568, 425 P.2d 502 (1967). A consensual lien is created by the contracts of the parties. A consensual lien in property is referenced in security instruments. Whether the Land Sale Contract at issue

here created a real property interest or a personal property interest, the contractual rights of the parties are separate from the property interests of the parties. In order to create a consensual lien, the contract rights must be specified in the security instruments.

## CONCLUSION

HFC does not have a valid, perfected security interest in the interest of the vendors under the Land Sale Contract dated October 27, 1988 between Wilbur A. Stoller and Helen L. Stoller and the debtor, John W. Stoller, Inc., covering the Home Place. Wilbur–Ellis has an interest in the proceeds from the Land Sale Contract by virtue of its judgment lien. The court reverses the judgment of the bankruptcy court in favor of HFC and will enter judgment in favor of Wilbur–Ellis.