KISTLER, J.,
dissenting.
The majority holds that both the seller and the purchaser on a land sale contract are “owners” for the purposes of Ballot Measure 49. In reaching that conclusion, the majority starts from the proposition, with which I agree, that the definition of “owner” in Measure 49 is ambiguous. It is possible to read that definition either as the seller and the purchaser do (owner includes both the seller and the purchaser) or as the state does (in the context of a land sale contract, owner means only the purchaser). The majority errs, however, in resolving that ambiguity. It appears to derive certainty from sources that, in themselves, merely confirm the ambiguity, and it discounts context that demonstrates that the three categories of owners described in the definition are mutually exclusive. I would hold, as both the trial court and the Court of Appeals did, that, in a land sale contract, only the purchaser is the owner.
ORS 195.300(18) defines “owner” for the purposes of Measure 49. It provides,
“‘Owner’ means:
“(a) The owner of fee title to the property as shown in the deed records of the county where the property is located;
“(b) The purchaser under a land sale contract, if there is a recorded land sale contract in force for the property; or
“(c) If the property is owned by the trustee of a revocable trust, the settlor of a revocable trust, except that when the trust becomes irrevocable only the trustee is the owner.”
In the parties’ view, the meaning of that definition turns on the word “or.” The state argues that “or” signifies that the three categories of owners set out in the definition are mutually exclusive. A person can come within only one of them. Because this case involves a recorded land sale *447 contract, the state reasons that only the purchaser is the owner. The purchaser and the seller, for their part, recognize that “or” is disjunctive but contend that the alternatives it joins are not mutually exclusive. In their view, both paragraphs (a) and (b) define who is an owner under a land sale contract. They argue that, because the seller under a land sale contract retains fee title, the seller is an owner under paragraph (a), and that the purchaser is an owner under paragraph (b).[1]
In resolving that issue, the majority starts correctly. It notes that “or” is ambiguous. It may join mutually exclusive choices. Alternatively, it may be used in an inclusive sense; that is, “or” may join choices that are not necessarily mutually exclusive. Having determined that “or” may be used either way, the majority concludes, correctly I believe, that “[w]hether the disjunctive ‘or’ is inclusive or exclusive will depend on its context.” At that point, however, the majority appears to take a wrong turn. It appears to presume that “or” is used inclusively unless the legislature either expressly states otherwise or the choices that “or” connects are necessarily mutually exclusive.
In this case, once we conclude, as the majority does, that “there is nothing very plain about the use of the connective ‘or,’” then we should look to the text of the definition, the definition’s context, and its legislative history to determine its meaning. Those sources lead me to conclude that the three paragraphs that comprise the definition of owner identify three discrete categories of owners. Each category is self-contained; none bleeds over into the other. Paragraph (a) sets out the general rule: ‘“[o]wner’ means * * * [t]he owner of fee title to the property.” Paragraphs (b) and (c) define what “owner” means in two discrete contexts: when there is a recorded land sale contract and when there is (or was) a revocable trust.
*448 The text of the definition is at odds with the majority’s interpretation of it. Paragraph (b) provides that £“[o]wner’ means *** [t]he purchaser under a land sale contract, if there is a recorded land sale contract in force for the property.” The text of that paragraph identifies only one owner when there is a recorded land sale contract. If there is a recorded land sale contract in force for the property, then £“[o]wner’ means * * * [t]he purchaser.” Conversely, if there is no recorded land sale contract in force (or no revocable trust), then ££[o]wner means * * * [t]he owner of fee title to the property.”
If the drafters of Measure 49 had intended the meaning that the majority draws from the definition, presumably they would have said that £££[o]wner’ means * * * the purchaser [and the seller] under a land sale contract, if there is a recorded land sale contract in force for the property.” Or they would have said that £££[o]wner’ [includes] * * * [t]he purchaser under a land sale contract,” if they had intended that paragraph (a) would also apply if there is a recorded land sale contract. The drafters, however, did not take either of those courses. In my view, the text of paragraph (b) is difficult to square with the majority’s conclusion that paragraph (b) does not provide a complete definition of “owner” when there is a recorded land sale contract.
Paragraph (c) is consistent with that conclusion. That paragraph sets out the rule for identifying who owns property held in a revocable trust. The first sentence of paragraph (c) states that, ££[i]f the property is owned by the trustee of a revocable trust, [then ‘owner’ means] the settlor of [the] revocable trust.” Paragraph (c) also provides that, if the trust has become irrevocable, then “only the trustee is the owner.” It may be that, under the terms of paragraph (c) , both the trustee and the settlor of a revocable trust are “owners” for the purposes of Measure 49. However, the more important lesson to draw from paragraph (c) is that that paragraph is a complete thought. That is, the references to the trustee as an “owner” within paragraph (c) reveal who is an owner when there is a revocable trust, without any need to look to paragraph (a) to supplement the definition in paragraph (c).
*449 The texts of paragraphs (b) and (c) define who is an owner for the purposes of Measure 49 in two discrete contexts — land sale contracts and revocable trusts. Each paragraph stands alone. The majority errs in relying on paragraph (a) to supplement what the text suggests are complete definitions in paragraphs (b) and (c). Two related but separate contextual clues support that conclusion. The first is the common-law understanding of who is an owner under a land sale contract. See Klamath Irrigation District v. United States, 348 Or 15, 23, 227 P3d 1145 (2010) (explaining that the context for interpreting a statute’s text includes the preexisting common law and statutory framework within which the law was enacted).
Before the voters adopted Measure 49, this court’s cases made clear that, in a land sale contract, the purchaser “is looked upon and treated as the owner of the land” City of Reedsport v. Hubbard, 202 Or 370, 390, 274 P2d 248 (1954) (emphasis in original) (internal quotation marks omitted). By contrast, the seller in a land sale contract retains only a limited interest: “(1) the right to receive contract payments, and (2) the legal title in the property securing the purchaser’s obligation to make the contract payments, with the concomitant possibility of resuming general ownership of the land upon default.” Bedortha v. Sunridge Land Co., Inc., 312 Or 307, 311, 822 P2d 694 (1991) (internal quotation marks omitted). As the quotation from Bedortha makes clear, the seller in a land sale contract does not retain “general ownership” of the land. Rather, the seller retains title to the land only as security.
This court’s cases consistently have recognized that, as a general rule, “[u]nder an executory contract for the sale and purchase of land the [purchaser] is treated in all respects as the owner of the property.” City of Reedsport, 202 Or at 390; see also Thienes v. Francis, 69 Or 171, 179, 138 P 345 (1914) (explaining that the relationship between the purchaser and seller under a land sale contract is “analogous to that of mortgagor and mortgagee”). Admittedly, even though this court stated in City of Reedsport that the purchaser under a land sale contract is treated “in all respects as the owner of the property,” it later reaffirmed that there are exceptions to that general rule. See Heider v. Dietz, 234 Or 105, 115, *450 380 P2d 619 (1963). For example, when the seller under a land sale contract is a judgment debtor, the judgment lien attaches to the seller’s interest in the land. Id.; see Bedortha, 312 Or at 313 (reaffirming that, in a land sale contract, the title to the property and the seller’s right to receive contract payments are subject to a judgment creditor’s lien). As the court explained in Heider, “equity [will not] suffer the holder of the vendor’s interest to work a forfeiture [of the judgment creditor’s rights] by applying the doctrine of equitable conversion under facts making such application clearly improper.” 234 Or at 116.
In providing a definition of owner for Measure 49, paragraph (b) of ORS 195.300(18) adopts the general common-law rule that the purchaser is the owner under a land sale contract. It does not adopt one or some of the exceptions to that rule. It does not recognize that, in some limited circumstances, the seller will be regarded as the owner. By contrast, if the majority were correct that paragraph (a) also defines who is an owner under a land sale contract, then the seller under a land sale contract would always be an “owner” of the property. That is so even though, under the common law, the seller would be regarded as the owner only in limited circumstances and only when necessary to avoid an inequitable result.[2] Without some evidence that the drafters of Measure 49 intended to depart from the common-law rule, we should be hesitant to use the general definition of owner set out in paragraph (a) to supplement the definition of owner in paragraph (b), which specifically addresses who is the owner under a land sale contract. Put differently, the specific should control over the general.
*451 Another contextual clue points in the same direction. Under Measure 49, only an owner can be a “claimant” — that is, only an owner can claim a right under Measure 49 to build three houses on land that the claimant owns. See Or Laws 2007, ch 424, § 6(6)(a). The right that Measure 49 grants “owners” does not fit comfortably with the majority’s conclusion that the seller on a land sale contract is an owner within the meaning of ORS 195.300(18). Ordinarily, the seller on a land sale contract retains no right either to subdivide the property that he or she has sold or to build anything on it. See Bedortha, 312 Or at 311 (listing the rights that a seller retains under a land sale contract). Under the majority’s interpretation, the right that Measure 49 grants sellers under land sale contracts is a right that they no longer have the ability to exercise.
The same point may be made another way. Suppose that a purchaser under a land sale contract obtained and exercised the right under Measure 49 to build three homes on the property. Only the purchaser would be entitled to receive the income resulting from those homes. See City of Reedsport, 202 Or at 389 (“Under the law of this state, [the seller] is not entitled to the rents and profits in the use of * * * premises [being purchased under a land sale contract] while [the purchaser] was lawfully entitled to and was in possession thereof under his contract.”). The seller, for its part, would be entitled only to receive the payments that the purchaser promised to make under the land sale contract. See Bedortha, 312 Or at 313. It is difficult to see why the seller would be regarded as an “owner” of the property under Measure 49 when the seller ordinarily would have no right to any economic benefit flowing from the rights Measure 49 grants owners.[3] The majority’s conclusion that paragraph (a) defines who is an owner under a land sale contract results in an anomaly.
The legislative history of Measure 49 is consistent with its text and context. Both the ballot title summary and the explanatory statement in the voters’ pamphlet told *452 voters that Measure 49 “[m]odifies Measure 37 (2004) to give landowners with Measure 37 claims the right to build homes as compensation for land use restrictions imposed after they acquired their properties.” Voters’ Pamphlet, Special Election, Nov 6, 2007, 7 (ballot title summary); see id. at 19 (explanatory statement). Consistent with the text and context of Measure 49, the voters’ pamphlet twice told voters that Measure 49 gave landowners the right to build homes on their property. Cf. Ecumenical Ministries v. Oregon State Lottery Comm., 318 Or 551, 560 n 8, 871 P2d 106 (1994) (the legislative history of an initiated measure includes the ballot title); State v. Guzek, 322 Or 245, 274, 906 P2d 272 (1995) (the legislative history of an initiated measure includes the explanatory statement). The proposition that, under Measure 49, a landowner has the right to build on his or her property is difficult to square with the majority’s conclusion that “owner” includes the seller on a land sale contract; as noted, the seller under a land sale contract ordinarily has no right to build anything on the property he or she has sold.
To be sure, it is possible to say, as the majority does, that a seller on a land sale contract can exercise the right to build houses on the land derivatively through the purchaser. But that seems a strained way to interpret the text, context, and legislative history of the statutory definition of owner. The more natural reading of ORS 195.300(18)(b) is that it means what it says: If there is a recorded land sale contract in force, then “£[o]wner’ means *** [t]he purchaser under [the] land sale contract.” Only the purchaser under a land sale contract has the right to subdivide and build on the land that he or she has acquired, and only the purchaser has the right to enjoy the economic benefits flowing from developing the land that he or she has purchased.
In my view, the better way to resolve the ambiguity in the definition of owner is to recognize that paragraph (a) provides the general definition of owner and that paragraphs (b) and (c) provide complete definitions of owner in two limited situations — when there is a land sale contract and when there is a revocable trust. That interpretation gives effect to the conditions stated in the text of paragraphs (b) and (c). It also gives effect to the well-recognized common-law *453 understanding that, in land sale contracts, the purchaser is the owner. And it avoids the anomaly of saying that a seller under a land sale contract is the owner for the purposes of Measure 49 even though the seller cannot unilaterally exercise the rights that Measure 49 grants owners and ordinarily cannot profit from the purchaser’s exercise of those rights. I would affirm the trial court’s judgment and the Court of Appeals decision. Accordingly, I respectfully dissent.
Linder, J., joins in this opinion.

 The difference matters because only a person who owns property can bring a claim under Measure 49 to build homes on the property. See Or Laws 2007, ch 424, § 6(6)(a). Moreover, to establish a claim under Measure 49, the claimant must show that, on the date that the claimant acquired the property, the claimant “was permitted to establish at least the number of lots, parcels or dwellings on the property that are [now] authorized” under Measure 49. Id. § 6(6)(f).

 To the extent that the majority finds support in Heider for its contrary position, it reads that case for more than it is worth. The question in Heider was whether an earlier case correctly had stated that equitable conversion “invariably applies whenever real property is sold under a title-retaining contract.” 234 Or at 111. In holding that that statement was too broad, Heider recognized exceptions to the general rule. It did not do more than that, however. The majority also observes that, even if the common law regarded the purchaser as the owner for most purposes, the legislature is always free to define words to mean anything that it intends them to mean. While true, that reasoning assumes away the issue. It assumes that the legislature intended “owner” to mean both the purchaser and the seller under a land sale contract when the question is whether that was what the legislature meant. The common law that preceded the adoption of Measure 49 bears on that issue, or it should.

 To be sure, the parties to a land sale contract could always choose to allocate any economic benefits flowing from the development of the property differently. But, as a general rule, the seller has no right to receive such benefits. See City of Reedsport, 202 Or at 389.